# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| HENRY BYRD | CIVIL ACTION NO. 07-0029 |
| VS. | SECTION P |
| | JUDGE DOHERTY |
| L.C.S. CORRECTIONS SERVICES, INC., ET AL. | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Plaintiff, Henry Byrd, is an inmate in the legal custody of the Alabama Department of Corrections (ADOC); however, he is incarcerated at the South Louisiana Corrections Center (SLCC), Basile, Louisiana.  Plaintiff complains of various constitutional violations arising during the course of his imprisonment in Louisiana.  Plaintiff filed the following *pro se* pleadings *in forma pauperis* on January 5, 2007:

1. Civil rights complaint pursuant to 42 U.S.C. §1983 [doc. 1] ;
2. Motion for Temporary Restraining Order and Temporary Injunction [doc. 3];
3. Motion to Stay Proceedings in Lower Court [doc. 4];
4. Motion to Appoint Counsel [doc. 6];
5. Motion for Clerk to File All Pleadings [doc. 5].

Byrd names as defendants L.C.S. Corrections Services, Inc. (LCS), Wardens Gary Copes and Stephen Bullard, Deputy Wardens Alton Jack and David Viator, Majors Striedel and Celestine, Captains Ivory and Jones, Lieutenants Courville, Grainger, and  Jordan, Sergeants Acevedo and Darby, and Premiere Management Enterprises, Inc.  Plaintiff prays for compensatory damages and injunctive relief.

These matters have been referred to the undersigned for review, report and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of

2

the court.  For the following reasons, it is recommended that the complaint and the pleadings and

motions associated with it be **DENIED** and **DISMISSED WITH PREJUDICE.**

## *Background*

## 1. Plaintiff's Previous Habeas Corpus Petition

In March 2006 plaintiff and other ADOC inmates were transferred to the LCS prisons

located in Basile and Pine Praire, Louisiana.  On March 27, 2006, plaintiff and other similarly

situated ADOC inmates filed a petition for writ of *habeas corpus* in this court alleging that they

were being illegally and unlawfully detained in violation of the Constitution and laws of the

United States and the State of Alabama.  Plaintiffs also sought class action certification for their

*habeas* petition. See *Henry Byrd, et al. v. LCS Corrections Services, Inc.,* No. 6:06-cv-0538

[hereinafter *Byrd I* at doc. 1]

On June 1, 2006, plaintiff filed additional pleadings seeking a Temporary Restraining

Order prohibiting the defendants from tampering with his mail and retaliating against him for

filing the *habeas* petition.  In support of this Motion plaintiff alleges that

> "... on March 21, 2006, Lt. Timothy Courville ... read my mail going to the local
> media concerning the petition for writ of emergency habeas corpus. After reading
> the mail, Lt. Timothy Courville then signed off on the letter signifying the letter
> was o.k. to mail. I then sealed the letter in front of Lt. Courville, put the correct
> postage on the letter and mailed the letter to the local media pursuant to the
> federal mail box rule by turning it over to prison officials for deposit in the U.S.
> Mail by placing it in the internal mail system for the prison, that is located in the
> dinner hall and Lt. Courville called me out on the hall and Lt. Courville put me in
> a lock up cell without any reason given. I then drafted a petition for emergency
> habeas corpus and filed it pursuant to the federal mailbox rule by turning it over to
> prison officials for mailing. I later found out that the Court never received the
> letter. On April 3, 2006 I was notified that Major Michael Streidel, another
> employee at South Louisiana Correctional Center and who is also employed by
> LCS Corrections Services, Inc., had taken my mail out of the internal mail system
> mailbox, opened my mail and confiscated my mail." [*Byrd I* at doc. 10]

3

In light of those allegations, counsel was appointed to represent plaintiff.

On June 12, 2006, the undersigned presided over a telephone conference regarding the status of plaintiff's request for a temporary restraining order [*Byrd I*, doc. 19],  and,  on June 13, 2006, plaintiff's court-appointed attorneys and attorneys representing LCS submitted a "Consent Motion for Temporary Restraining Order and Preliminary Injunction" which jointly requested an order "[e]njoining and restraining LCS ... from impeding and/or stopping the mail of Henry Byrd... and ... [e]njoining and restraining LCS from placing Henry Byrd in any 'lock up status' ... in retaliation for Henry Byrd's filing of a petition for habeas corpus..." [*Byrd I*, doc. 17-1]

On June 14, 2006, United States District Judge Tucker L. Melançon issued the order as requested by counsel and directed that the temporary restraining order and preliminary injunction "... shall continue as prospective relief until and through the earlier of: (a) the final disposition of the petition for habeas corpus filed by Henry Byrd in the above-captioned matter, and/or (b) further orders from the Court with respect to the date of termination of said injunction." [*Byrd I*, doc. 23]  On the same date, the undersigned terminated the appointment of counsel on behalf of plaintiff Byrd. [*Byrd I*, doc. 24]

On June 28, 2006, the undersigned authored a Report recommending dismissal of the *habeas* petition and denial of the motion for class certification. [*Byrd I*, doc. 37[1]] On July 10,

_____

[1]  In recommending dismissal, the undersigned noted that the United States Supreme Court rejected an argument similar to the one advanced by the plaintiff  in the case of  *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 1745-1746, 75 L.Ed.2d 813 (1983).  The undersigned further noted, "There, [in *Olim*] the Court upheld the constitutionality of a state prisoner's transfer from Hawaii to California and noted, 'Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State. Often, confinement in the inmate's home State will not be possible.  A person convicted of a federal crime in a State without a federal correctional facility usually will serve his sentence in another State. Overcrowding and the need to separate particular prisoners <u>may necessitate</u>

4

2006 plaintiff filed an objection to the Report. [*Byrd I*, doc. 42] On July 13, 2006, Judge Melançon signed a judgment of dismissal. [*Byrd I*, doc. 43]

Thereafter, on July 20, 2006, plaintiff filed "Supplemental and Amended Objections" [*Byrd I*, doc. 44], and, on July 26, 2006 he filed a "Motion for Relief from Judgment" [*Byrd I*, doc. 47].   On July 26, 2006, counsel for the defendants, joined by plaintiff, filed a joint Motion to Dismiss which noted, that "... the case has been settled and compromised, with the exception of Henry Byrd's rights to continue to petition the Court for Habeas Corpus relief, which rights shall be continuing." [*Byrd I*, doc. 48] On July 28, 2006, Judge Melançon signed the Joint Motion to dismiss which ordered the dismissal of the suit with prejudice "... except for Henry Byrd's right to continue to prosecute his claims for Habeas Corpus relief, which claims remain ongoing..." [*Byrd I*, doc. 49]

On July 31, Judge Melançon denied plaintiff's Motion for Relief from Judgment. [*Byrd I*, doc. 50]

On August 9, 2006 plaintiff filed a Motion for Permanent Injunction asking the court to permanently enjoin the defendants "...from impeding and/or stopping the mail of Henry Byrd...

---

interstate transfers.' *Olim v. Wakinekona*, 461 U.S. at 245-246, 103 S.Ct. at 1745-1746.  Nor does petitioners' transfer from a state prison to a private prison alter the analysis. Compare  *Montez v. McKinna*, 208 F.3d 862 (10th Cir. 2000).  In short, petitioners have no constitutional right to be incarcerated in any particular prison and their transfer to the LCS prisons in Louisiana cannot serve as the basis for federal *habeas corpus* relief. See *White v. Lambert*, 370 F.3d 1002 (9th Cir. 2004).

To the extent that petitioners claim that their transfer from Alabama to Louisiana violates Alabama law, such a claim is simply not cognizable in a petition for federal writ of *habeas corpus*.  See 28 U.S.C. § 2241(c)(3) which provides in part, 'The writ of *habeas corpus* shall not extend to a prisoner unless ... [h]e is in custody <u>in violation of the Constitution or laws or treaties of the United States</u>...' ; see also §2254(a) which provides, '... a district court shall entertain an application for a writ of *habeas corpus* in behalf of a person in custody pursuant to the judgment of a State court <u>only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.</u>' (emphasis supplied)" [*Byrd I*, doc. 37 at pp. 6-7.]

5

and ... [e]njoining and restraining LCS from placing Henry Byrd in any 'lock up status' ... in retaliation for Henry Byrd's filing of a petition for habeas corpus..."  In support of this motion plaintiff alleged that he had "... sent several motions off to the various Alabama state courts and that the motions have never reached the courts."  He also alleged, "... that it is just a matter of time before LCS ... will retaliate by putting the petitioner ... on lock up status ... for filing of a habeas petition..." [*Byrd I*, doc. 52]   On August 14, 2006 the defendants  filed a Memorandum in Opposition to the Motion for Permanent Injunction. [*Byrd I*, doc. 54] On November 13, 2006 the defendants filed an Answer to the Motion for Contempt of Court which alleged, " ... that any and all mail checked by prison officials was done so for penalogical purposes and all disciplinary charges ... were filed based on information and belief and/or personnel knowledge of his infraction of prison rules and regulations..." [*Byrd I*, doc 55]

On March 1, 2007, Judge Melançon denied the motion. [*Byrd I*, doc. 56]

## 2. Civil Rights Complaint Sub Judice

Plaintiff filed the instant civil rights complaint on January 5, 2007.  He complains that the defendants conspired to deprive him of rights guaranteed under the First Amendment when defendant Streidel stole plaintiff's mail out of the United States Mail receptacle in the prison chow hall, and when defendant Darby "... stole the plaintiff's legal mail, for a Writ of Habeas Corpus, thereby depriving the Plaintiff's right to communicate by mail and depriving the Plaintiff's right under the Fourteenth Amendment ... to due process to access the Courts." [doc. 1-4, paragraph 18]  He accuses Streidel and Darby of separate violations of his First and Fourteenth Amendment rights and his right of access to the courts. [*id*, paragraphs 19-20]

6

Plaintiff complains that defendants Copes, Jack, Streidel, and Bullard deprived him of "meaningful access to the Courts" by failing to provide "adequate access to an adequate law library."  He also claims that these defendants denied him the "right to research his own legal work as well as other Alabama inmates..." thus violating the equal protection clause of the Constitution. [*id*., paragraph 21]

Plaintiff contends that LCS and Premiere Management Enterprises, Inc. violated his equal protection rights by "price gouging and charging excessive prices for the canteen items..." Plaintiff claims that he is paying "... 2-5 time the amount of the prices that he was paying in Alabama for the same items..." [*id*., paragraph 22]

He complains that LCS and Streidel deprived him of his right to religious expression and thus violated the First Amendment and the equal protection clause of the Fourteenth Amendment by failing to provide "a faith-based honor dorm..." such as the one he was assigned to in Alabama. [*id*., paragraph 23]

He claims that LCS and defendant Viator deprived him of due process "... by having an inadequate grievance procedure..." [*id*., paragraph 24]

He accuses defendant's Acevedo  and Streidel of depriving him of due process "... by not holding an impartial and fair disciplinary hearing ... causing plaintiff to be found guilty of a charge that he could not possibly have been found guilty of..." [*id*., paragraph 25]

He complains that LCS, Copes, and Bullard deprived him of due process and equal protection "... by forcing the Plaintiff to comply with the rules, regulations, and guidelines of LCS, the Louisiana Department of Public Safety and Corrections, and the Alabama Department

of Corrections..." since Alabama inmates confined in Alabama have only to abide by the ADOC rules and regulations. [*id.*, paragraph 26]

He contends that LCS and Copes have deprived him of due process by illegally confining him at SLCC in violation of La. R.S.15:709(c). He further maintains that "false imprisonment" is illegal in both Louisiana and Alabama. [*id.*, paragraph 27]

He claims that LCS, Copes and Bullard have deprived him of the right to receive "incentive packages" (packages of clothing, hygiene products, etc. sent by relatives which ADOC allows inmates to receive as incentives for good behavior) and that this violates equal protection since all ADOC inmates in Alabama enjoy this right and even the ADOC female inmates housed in Louisiana enjoy this right. [*id.*, paragraph 28]

He accuses LCS, Jack and Ivory of violating his due process rights when they conducted an illegal strip search of the plaintiff without probable cause and deprived him of legal paper, tobacco, and, coffee which was not contraband since it was purchased from the institution's commissary. He also alleges that this strip search was done in front of female employees and was video-taped. [*id.*, paragraph 29]

### 3. Plaintiff's Petition for Removal

In conjunction with the filing of this complaint, plaintiff also filed a "Notice of filing of Plaintiff's Petition for Removal," and [doc. 1-5] a Petition for Removal. [doc. 1-6]  In this latter pleading, plaintiff alleges that on or about September 27, 2006 he filed a civil suit against the defendants in the Thirteenth Judicial District Court, Evangeline Parish, in the matter entitled Henry Byrd v. LCS Corrections Services, Inc., et al., No. 68351-A.  He claims that service was

effected on the defendants on November 30, 2006.  In this motion, plaintiff requests removal of

his action to federal court pursuant to 28 U.S.C. §1441 *et seq.*

### 4. Plaintiff's Application for TRO and Preliminary Injunction

Plaintiff also filed on January 5, 2007, a pleading entitled "Application for Temporary

Restraining Order/Preliminary Injunction." [doc. 3]  Plaintiff asks the court to enjoin LCS from:

1.    denying plaintiff meaningful access to the courts by way of adequate access to an
      adequate law library;

2.    denying plaintiff an opportunity to assist the Alabama inmates in the research,
      preparation, and filing of legal papers;

3.    denying plaintiff access to the law library computer that have Microsoft Word to
      aid in the preparation of filing legal papers;

4.    denying plaintiff access to the printer located in the law library;

5.    impeding the plaintiff's in-coming and out-going mail;

6.    placing plaintiff in lock-up status in retaliation for filing this complaint.

In support of his Application, plaintiff alleges: (1) On March 27, 2006 plaintiff filed a

petition for *habeas corpus* and, as a result, he was placed in lock-up from March 31, 2006 –

April 17, 2006 without due process; (2) on March 31, 2006 plaintiff filed a second petition for

*habeas corpus* challenging his detention in lock-up; he gave the petition to defendant Darby to

deposit in the mail but the petition was apparently never mailed and thus never filed  in the

federal court; (3) on October 18, 2006 Streidel opened plaintiff's legal mail outside of plaintiff's

presence and kept it away from plaintiff for two days and when plaintiff wrote a grievance

Streidel retaliated by filing a disciplinary charge against him; (4) LCS and others have displayed

a continual pattern of interfering with plaintiff's mail; (5) defendants have engaged in a

9

consistent pattern of denying plaintiff adequate access to an adequate law library; he is allowed to spend only 12 - 14 hours / week in the law library; (6) plaintiff is not permitted to assist other prisoners in the preparation of legal papers; and, (7) plaintiff is not permitted access to the computers with Microsoft Word and, he is not permitted access to printers. [doc. 3]

### 5. Motion for Stay

On the same date plaintiff filed a "Motion for Stay of Proceedings in the Lower Court Pursuant to the All Writs Act." [doc. 4] In this pleading plaintiff asks this court to "... accept and acquire jurisdiction to stay the proceedings in the Court of Criminal Appeals of Alabama pursuant to the All Writs Act..."  Plaintiff claims that he was unable to complete and file an appellate brief in the Court of Criminal Appeals of  Alabama because he has been denied access to an adequate law library.  He further claims that his previous  request for stay filed in the Alabama court was denied.  Finally, he claims, "Without the stay being issued the plaintiff's challenging of his conviction and sentence will be dismissed for lack of prosecution due to the plaintiff not having adequate access to an adequate inmate law library..." The Docket Number of the case in question is allegedly Cr-05-1925.

### 6. Motion for Appointment of Counsel

On the same date plaintiff filed a Motion for Appointment of Counsel. [doc. 6]

### 7. Motion for Clerk to File all Pleadings

Finally, plaintiff filed a motion asking the court to deem all pleadings filed by him to have been filed on the date he tendered the documents to jail authorities for mailing. [doc. 5]

10

*Law and Analysis*

*1. Frivolity Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to

42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of

process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A;

28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2

F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118

L.Ed.2d 340 (1992).  A civil rights complaint fails to state a claim upon which relief can be

granted if  it appears that no relief could be granted under any set of facts that could be proven

consistent with the allegations of the complaint. Of course, in making this determination, the

court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint

as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116,

1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given

broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A.

(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

11

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has submitted a complaint and other associated motions and pleadings along with sworn affidavits in support of his complaint. Plaintiff has provided all of the information necessary to resolve his claims. He need not be afforded an opportunity for further amendment. His claims are frivolous. His complaint fails to state a claim for which relief may be granted, and the associated pleadings and motions are without merit.

## 2. Appointment of Counsel

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

12

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

In his civil rights complaint, plaintiff alleges claims that are not particularly complex or difficult to present. Plaintiff has managed to file his original complaint and numerous associated motions and other pleadings setting forth his causes of action against each of the named defendants. No special legal knowledge is required of plaintiff herein. Additionally, plaintiff has first hand knowledge of the facts which form the basis of this action. The claim is typical of those often asserted in civil rights litigation and is not complex. Further, as is shown hereinafter, the

13

undersigned, accepting all of plaintiff's factual allegations as true, has nonetheless determined that plaintiff has failed to state a claim for which relief may be ordered.  Thus, there is no likelihood that appointment will benefit the petitioner, the court, and the defendants by shortening the trial and assisting in arriving at a  just determination.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to  warrant the appointment of counsel.

### 3. Complaint

Plaintiff argues a veritable litany of complaints with regard to the circumstances of his confinement at the SLCC.  As is shown hereinafter, these complaints either lack basis in fact, a basis in law, or both.

### Counts One, Two, and Three –  Interference with Legal Mail and Access to Courts

Plaintiff complains that various defendants conspired to deprive him of his First Amendment Right to communicate by mail and to access the courts on two specific occasions.

First, plaintiff claims that on March 31, 2006 he was wrongfully confined to "lock-up" status. While so confined, plaintiff prepared a second Emergency Writ of *Habeas Corpus* challenging his detention in "lock down." According to plaintiff, this confinement to "lock down" violated his Due Process Rights and the second petition was prepared to challenge this aspect of his confinement.  According to plaintiff, he submitted this pleading to Sgt. Darby for filing, however, the pleading was never filed in federal court.  [see doc. 3, paragraphs 1-2] Second, plaintiff claims that on October 18, 2006, defendant Major Streidel opened plaintiff's "legal mail" outside of plaintiff's presence and did not allow plaintiff access to this "legal mail"

14

for a period of two days. [doc. 3, paragraph 3]  Construed liberally, plaintiff alleges that Sgt. Darby's actions deprived him of his right to access the courts.

At the outset, it is noted that plaintiff obtained his requested injunctive relief prohibiting the defendants from "... impeding and/or stopping..." his outgoing or ingoing mail. [*Byrd I*, doc. 23] Nevertheless, to the extent that plaintiff now seeks compensation for damages as a result of these allegations, he fails to state a claim for which relief may be granted.

In order to prevail on a denial of access to court claim, a civil rights plaintiff must show that he suffered some prejudice as a result of the deprivation.  See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988).  Put another way, in order to rise to the level of a constitutional violation of an inmate's right of access to the courts, the inmate must allege that his position as a litigant was prejudiced by the alleged mail tampering. See *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992).

Therefore, in order to prevail on the first claim, plaintiff must demonstrate that he was deprived of the opportunity to litigate his emergency writ of *habeas corpus* which contested his disciplinary conviction and assignment to the SLCC  "lock-up." In the wake of *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995), the ambit of a prisoner's potential Fourteenth Amendment due process liberty claims has been dramatically narrowed. A prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant

15

hardship on the inmate in relation to the ordinary incidents of prison life," and these will normally consist of deprivations which clearly impinge on the <u>duration</u> of confinement. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir.1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995)).  Plaintiff has alleged no loss no good time by virtue of the allegedly unfair proceedings which resulted in his assignment to "lock-up," therefore, he had no liberty interest or other  federally protected due process rights in connection with the proceeding and the penalty imposed. In other words, even if plaintiff's emergency writ of *habeas corpus* had been filed, it would have been dismissed as frivolous pursuant to *Sandin, supra*, and progeny. Thus, since plaintiff cannot demonstrate prejudice, his first claim against Sgt. Darby lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The second claim is subject to dismissal for the same reason.  Plaintiff claims that Major Streidel interfered with his mail and withheld "legal mail" for a period of two days. As with the first claim, in order to rise to the level of a constitutional violation plaintiff must allege that his position as a litigant was prejudiced by the Major's  alleged mail tampering. See *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992). Here, plaintiff has only asserted that Major Streidel deprived him of his mail for a period of two days. He did not claim that his position as a litigant was in any way prejudiced by this act and therefore he has failed to state a cognizable constitutional claim. See *Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir.1993), *Walker v. Navarro County Jail*, 4 F.3d 410 (5th Cir.1993).

16

**Count Four – Access to Courts – Adequate Access to Adequate Law Library**

Next, plaintiff complains that he is not allowed "adequate" access to an "adequate" law library.  Plaintiff has misconstrued and exaggerated the constitutional parameters of the right of access to the courts.  This right merely assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997).

However, prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims.  See *Lewis v. Casey*, 518 U.S. at 356, 116 S.Ct. at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.")

Plaintiff's allegations, construed liberally and taken as true for the purposes of this review, fail to demonstrate that the defendants denied  him access to the courts under the applicable jurisprudence.  The Supreme Court instructs that the right guarantees the ability of an inmate to prepare and transmit a necessary legal document to a court, but no more.  *Brewer v. Wilkinson*, 3 F.3d at 821. See also *Lewis v. Casey*, 518 U.S. at 349-355, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Clearly, plaintiff has not been denied that right.

The record demonstrates that plaintiff was able to file and litigate his habeas corpus claim under Docket Number 6:06-cv-0538. (*Byrd I*)  In that case, he was afforded the opportunity to

17

prepare and file a twelve-page, hand-written petition for writ of habeas corpus citing Louisiana, Alabama, and Federal law in support thereof [Byrd I, doc. 1]; a Motion to Proceed *in forma pauperis* [id., doc. 3]; a Motion to Certify Class Action suit [id, doc. 6]; a Motion for Temporary Restraining Order [id., doc. 10]; a Motion to Substitute Defendant and Amend Petition for Writ of Habeas Corpus [id., doc. 30]; a timely objection to the Report and Recommendation [id., doc. 42]; Supplemental and Amended Objections [id., doc. 44]; a Motion for Relief from Judgment [id., p. 47]; and a Motion for Permanent Injunction [id., doc. 52]. Additionally, in the instant case [6:07-cv-0029], he has filed a complaint [doc. 1-1] which included a  fifteen-page typed memorandum in support of the complaint [doc. 1]; a Notice of Removal and Petition for Removal [docs. 1-5 and 1-6]; a Motion for Temporary Restraining Order and Preliminary Injunction [doc. 3]; a Motion to Stay [doc. 4]; a Motion to Appoint Counsel [doc. 6]; a Motion to File all Pleadings [doc. 5]; a letter of inquiry to the Clerk of Court [doc. 9]; an exhibit in support of his claims [doc. 11]; and a completed *in forma pauperis* application [doc. 13]. Further, plaintiff admits that he is permitted to spend up to 14 hours per week in the SLCC law library. [doc. 3, pp. 7-8]

Further,  even assuming that plaintiff would be able to demonstrate that the defendant somehow deprived him of his constitutional right to access the courts, he must still allege facts to establish that he suffered some prejudice as a result of the deprivation.  See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988).  In *Lewis v. Casey*, the Court noted that its prior

18

access to courts jurisprudence  "...did not create an abstract, freestanding right to a law library or legal assistance...", and that  "...an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense...". Thus, according to the Court, an inmate alleging the denial of access to the courts based upon the inadequacies of the institution's law library  "... must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351.

Plaintiff has wholly failed to allege any <u>specific</u> facts establishing that he was <u>actually prejudiced</u> in connection with any pending or contemplated legal proceeding by any alleged act or omission by any of the named defendants herein.  Because plaintiff has presented no fact-specific allegations establishing that he was ever actually prejudiced in connection with any actual or proposed legal proceeding, his claims do not provide a basis for recovery under §1983.

Plaintiff has not shown that the actions of the defendants inhibited him from filing or litigating a non-frivolous complaint.  Plaintiff only claims, "I am currently challenging my [Alabama] conviction and sentence and I cannot do so because I do not have access, adequate access to an adequate inmate law library and this prejudices me, for I am showing actual innocence." [doc. 3, p. 8]  His claim of actual innocence is, of course, a fact-driven claim; he does not suggest how access to law books would enhance the presentation of such a claim. His access to court claim based on the alleged inadequacies of the SLCC Law Library, is also frivolous, and dismissal on that basis is appropriate.

Further, plaintiff's complaint alleges a denial of equal protection based upon his claim that he is treated differently than other ADOC inmates who have greater access to better law

19

libraries located within the prisons administered by ADOC.  In order for plaintiff to succeed on this equal protection claim, he must prove that the defendants  "created two or more classifications of similarly situated prisoners that were treated differently, ... and (2) that the classification had no rational relation to any legitimate governmental objective." *Stefanoff v. Hays County, Tex.*, 154 F .3d 523, 527 (5th Cir.1998) (citations omitted). He must demonstrate that the defendant acted with a "discriminatory purpose ." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir.1995). "Discriminatory purpose ... implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Id.* (quoting *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir.1992)). "The existence of a discoverable group or classification antedating the challenged state action is a *sine qua non* for proving purposeful discrimination; it cannot tenably be maintained that the state selected a particular course of action to harm an 'identifiable group' when that body did not exist until after the state acted." *Id.* at 307. While prisoners are a class within the general population, "prisoners *qua* prisoners" are not a "discoverable group or class." *Id.* at 307 n. 10. See *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir.1997) ("Neither prisoners nor indigents constitute a suspect class.") See also,  *Harris v. McRae*, 448 U.S. 297, 323, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980) (Indigents are not a suspect class.); *United States v. King*, 62 F.3d 891, 895 (7th Cir.1995) (Prisoners are not a suspect class.); see also *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440-41, 105 S.Ct. 3249, 3254-55, 87 L.Ed.2d 313 (1985) (Providing a listing suspect classes).

20

"Disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.1997).

With these principals in mind, and construing the complaint liberally, plaintiff simply has not demonstrated a "disparate impact;" nor has he demonstrated the existence of a "discoverable group or classification antedating the challenged actions" of the defendant.  As shown above, plaintiff has not alleged facts sufficient to establish a denial of access to the courts occasioned by his incarceration at SLCC. More importantly, he has not, nor can he show  the existence of a "discoverable group or classification antedating the challenged actions."

Finally, plaintiff's current "classification" is not the result of any act or omission by the named defendants. The fact that plaintiff is an Alabama inmate who is serving his sentence in a Louisiana prison cannot be attributable to these Louisiana defendants. The decision to send plaintiff to Louisiana was made by ADOC authorities.  Plaintiff has failed to state a claim for violation of his constitutional rights to access the courts or to equal protection and therefore, this claim must also be dismissed as frivolous.

In addition, plaintiff implies that he is entitled to do legal research on behalf of "... other Alabama inmates..." and that the defendants have interfered with this right.   Prisoners have no constitutionally protected right to act as inmate counsel; and inmates have no right to a particular prisoner's help in legal matters as long as the putative recipient's constitutional right to access to the courts is not otherwise infringed. *Tighe v. Wall*, 100 F.3d 41 (5 Cir.1996).

21

### Count Five – Price "Gouging" and Equal Protection

In Claim Five plaintiff complains that the defendants have deprived him of equal protection by charging higher prices for commissary items than are charged in Alabama.

Inmates have no constitutionally protected interest in purchasing stamps, food substances, or any other goods through the prison commissary at the cheapest price possible. Cf. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."); *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir.1980)(holding "there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost"); *McCall v. Keefe Supply Co.*, 71 Fed.Appx. 779, 780 (10th Cir.2003) (stating that an inmate's claim that prison commissary charged "outrageous" prices for goods purchased through the prison commissary failed to state a constitutional claim).

Further, for the reasons outlined in the discussion of Count Four, plaintiff has failed to state a claim for the violations of equal protection.

### Count Six – "Faith-Based" Honor Dorm

Plaintiff also complains that he has been deprived of his right "of religious expression under the First Amendment ... and equal protection clause..." by virtue of the defendants' refusal to provide a "faith-based honor dorm" at SLCC.

Inmates, such as the plaintiff, clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of

many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives.  See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349.  The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry:  (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice?  (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level?  (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally?  (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff implies that his right to freely exercise his religion has been impaired because there is no "faith-based honor dorm" at SLCC.  With regard to the first prong of the *Turner* test, plaintiff has not alleged he is prohibited from practicing his religion. The second and forth prongs of the *Turner* test, address whether or not  "alternative means" of practicing religion have

been made available to the plaintiff.  In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith."  *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004);  *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004).  The record does not establish that plaintiff has been denied any opportunities to practice his religion of choice.

In *O'Lone v. Estate of Shabazz, supra*, the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. 482 U.S. at 345-46.  The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff-inmates were not deprived of all forms of religious exercise.  Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352.

Like the plaintiffs in *O'Lone v. Estate of Shabazz*, this plaintiff has not, nor can he show, that he has been deprived of all means of religious expression.  Plaintiff does not contend that his right to worship, either alone or with a group of his co-religionists, has in any way been curtailed by the defendants; instead, he only faults them for not providing a "faith-based" dormitory.  In short, plaintiff has failed to demonstrate that his First Amendment free-exercise right has been

24

violated.  "[T]he loss of [plaintiff's] absolute freedom of religious expression is but one sacrifice required by [his] incarceration...."  *Scott v. Mississippi Dep't of Corrections*, 961 F.2d at 82. See *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir.1995) ("Reasonable time, place, or manner restrictions upon communal religious gatherings do not necessitate the identification of a compelling state interest.")  Accordingly, plaintiff's First Amendment free exercise of religion claim is frivolous.

Finally, to the extent that this complaint raises an equal protection claim, plaintiff has again failed to state a claim upon which relief may be granted.

While plaintiff and his co-religionists may be an identifiable group within the prison, plaintiff fails to show that the policy or practice complained of was enacted with any discriminatory purpose. See *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992) (finding no constitutional violation where plaintiffs were "given the same reasonable opportunity to practice their faith as that provided other religious groups"). Because plaintiff has failed to demonstrate a violation of his individual constitutional rights or a violation of the rights of all inmates housed in SLCC  to practice their religion, his equal protection claim has no merit.

### Count Seven – Inadequate Grievance Procedure

Plaintiff also faults the defendants for failing to provide an "adequate" inmate grievance procedure.  In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court narrowed the due process protections afforded to prisoners.  Prisoners have no federally-protected right to have grievances investigated and resolved. Such rights, if any, are provided by state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate the constitution and is thus not actionable under

25

Section 1983. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); See also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantial right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Plaintiff's claim that the defendants ignored his grievances is frivolous. He has failed to state a claim for which relief may be granted.

### Count Eight – Disciplinary Hearing

Plaintiff contends that his due process rights were violated when the defendants failed to convene an impartial and fair disciplinary hearing at which he was found guilty of an offense he did not commit.  As has previously been noted, in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995), the ambit of a prisoner's potential Fourteenth Amendment

26

due process liberty claims has been dramatically narrowed.  A prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and these will normally consist of deprivations which clearly impinge on the <u>duration</u> of confinement. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir.1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995)).  Plaintiff has alleged no loss no good time by virtue of the allegedly unfair proceedings which resulted in disciplinary rules conviction and therefore, he had no liberty interest or other federally protected due process rights in connection with the proceeding and the penalty imposed.

### Count Nine – Forced Compliance with Rules, Regulations, and Guidelines

Plaintiff claims that unlike other ADOC inmates, he must comply not only with the rules and regulations promulgated by ADOC, but he must also comply with the rules and regulations promulgated by LCS and the Louisiana Department of Public Safety and Corrections.  Construed liberally, this raises yet  another equal protection claim. For the reasons set forth above, such a claim must fail.

### Count Ten – Due Process Violation – Plaintiff's Confinement at SLCC is Illegal Under Louisiana and Alabama Law

This claim is identical to the claims raised in plaintiff's *habeas corpus* petition. [*Byrd I*] For the reasons set forth in the Report recommending dismissal of those claims, dismissal of this claim is likewise recommended. [See footnote 1, *supra*]

### Count Eleven – Equal Protection Violation, ADOC "Incentive Packages"

Plaintiff contends that he is denied the right to receive "incentive packages," gifts of clothes and hygiene products from relatives. He claims that this practice is permitted under

27

Alabama law as an incentive for good behavior. He therefore claims that this practice violates the equal protection guarantees.  For the reasons set forth above, plaintiff has again failed to state an equal protection claim.

### Count Twelve – Deprivation of Personal Property; Retaliation; Strip Search

Plaintiff contends that the defendants deprived him of personal property without due process and searched him without probable cause. He claims that he was strip searched in the presence of a female corrections officer. He claims that this deprivation and search were acts of retaliation.

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States.  42 U.S.C. §1983.  Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated.  If no constitutional violation has been alleged, there is no cognizable claim under §1983.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Constitution, Amendment XIV.  However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law.  The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the

28

Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts. *Id.* Although a prisoner may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford the prisoner a remedy. *Daniels,* 474 U.S. at 335, 106 S.Ct. at 667. Even in instances where intentional deprivation occurs, as is alleged herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994).  This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible.  *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that an intentional, random, and unauthorized deprivation occurred when plaintiff's personal property was seized by the named corrections officers.  If adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or for the intentional torts committed by employees of the prison facility.  See, La. Civil Code, Article 2315. This provision of state law which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth

29

Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine.  Unless plaintiff can show that the defendants violated his constitutional rights, plaintiff's claim is not a cognizable claim under §1983.

That does not end the inquiry, however, since plaintiff claims that the search and seizure were retaliation for the previous suit he filed.  It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).  However, as the Fifth Circuit has repeatedly emphasized, claims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions. *Woods v. Smith*, 60 F.3d at 1166. To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised  a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.  Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); *McDonald v. Steward*, 132 F.3d 225 (5th Cir. 1998).  "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999).  "The inmate must produce direct evidence of motivation or, the

more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084(1996)).

Plaintiff claims that the defendants' search of his person and seizure of his property were acts of retaliation against him however, he fails to offer anything more than conclusory allegations in support of this claim. He  has  failed to allege a pattern of retaliation and does not allege any evidence of motive on the part of any defendants.

He claims that the search of his person and the seizure of his property were specific acts of retaliation.  However, these acts, are not *per se* illegal and therefore are not retaliatory adverse acts.  This is so because the constitution does not protect a duly convicted prisoner against search and seizure in prison.  The United States Supreme Court has repeatedly found that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests. Prison officials need broad administrative authority because running a prison is an "extraordinarily difficult undertaking." *Mitchell v. Sheriff Department*, 995 F.2d 60, 62-63 (5th Cir.1993), citing *Wolff v. McDonnell*, 418 U.S. at 564-66, 94 S.Ct. at 2979; *Jackson v. Cain*, 864 F.2d 1235, 1247 (5th Cir.1989), citing *Hewitt v. Helms*, 459 U.S. 460, 466-68, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983).  Thus, with respect the Fourth Amendment claim, inmates  do not have a right to be free from searches, and, these searches may be conducted by prison officials without probable cause provided that they are conducted in a reasonable manner. *Bell v. Wolfish*, 441 U.S. 520, 558-59 (1979). Further, the Fifth Circuit has time and again held that even strip searches carried out in the presence of prison employees of the opposite sex are not

31

unconstitutional.  *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir.1992); *Elliott v. Lynn*, 38 F.3d 188, 190-92 (5th Cir.1994); *Oliver v. Scott*, 276 F.3d 736, 747 (5th Cir.2002).

As shown above, in order to establish retaliation, plaintiff must show that "but for" the exercise of a specific constitutional right, the alleged retaliatory act would never have occurred. Since the alleged "retaliatory acts" (i.e – the strip search, the search without probable cause, and the seizure of plaintiff's personal property) were not in and of themselves unconstitutional, plaintiff's retaliation claim lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**4. Motion for TRO and Preliminary Injunction [doc. 3]**

On January 5, 2007 plaintiff filed an Application for Temporary Restraining Order and Preliminary Injunction seeking to enjoin defendants (1) from denying the plaintiff "meaningful access to the courts" by way of adequate access to an adequate inmate law library ; (2) from denying the plaintiff the opportunity to assist the other Alabama inmates in the research, preparation, and the filing of legal papers; (3) from denying the plaintiff access to the inmate law library computers that have Microsoft Word to aid in the preparation and filing of his legal papers; (4) from denying plaintiff access to the printer; (5) from impeding or stopping the plaintiff's mail; and (6) from placing plaintiff in lock-up status.

 In order to be entitled to a temporary restraining order or a preliminary injunction, a litigant must demonstrate <u>each</u> of the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not have an adverse effect on the public interest. *Women's Med.*

32

*Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 418-20 (5th Cir.2001). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable harm." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir.1976).

Plaintiff simply cannot prevail because, as shown above,  he has not  demonstrated a substantial likelihood of success on the merits.  In fact, as show above, <u>all</u> of plaintiff's claims are subject to dismissal as frivolous.[2] Further, plaintiff's allegations concerning his fear of harm with respect to his claim of interference with legal mail and retaliatory disciplinary proceedings are conclusory at best and, standing alone do not establish a "substantial" likelihood of irreparable harm. Plaintiff's Motion for TRO and Preliminary Injunction [doc. 3] should be denied.

**5. Petition for Removal [doc. 1-5]**

Plaintiff claims that he filed a civil action in the Thirteenth Judicial District Court under Docket Number 68351-A. In his Petition for Removal filed January 5, 2007 [doc. 1-6] he asks that the matter be removed to federal court pursuant to 28 U.S.C. §1441 *et seq.*

28 U.S.C. §1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any
> civil action brought in a State court of which the district courts of

---

[2] Accepting all of plaintiff's factual allegations as true, the undersigned has concluded that the authorities at SLCC have and continue to provide plaintiff with "access to the courts" as that term has been defined by the Supreme Court and the Fifth Circuit Court of Appeals. The Courts simply have not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a necessary legal document to a court. *Brewer v. Wilkinson*, 3 F.3d at 821. See also *Lewis v. Casey*, 518 U.S. at 349-355, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).  Clearly, plaintiff has not been denied that right.  Plaintiff has been afforded sufficient access to the law library (14 hours/ week by his own admission) and plaintiff's claim that he has been (or will be) denied use  of computers or access to printers does not state a viable access to courts claim.

Further,  a prisoner has no constitutionally protected right to act as inmate counsel; and inmates have no right to a particular prisoner's help in legal matters. *Tighe v. Wall*, 100 F.3d 41 (5 Cir.1996).

33

the United States have original jurisdiction, <u>may be removed by the</u>
<u>defendant or the defendants</u>, to the district court of the United
States for the district and division embracing the place where such
action is pending... (emphasis supplied)

The above cited statute is clear. Only the <u>defendant</u> may remove a case from state court.

Thus, the statutory right of removal has been vested only in defendants. A plaintiff may not

remove an action from state court.  See *Smith v. St. Luke's Hospital*, 480 F.Supp. 58 ( S.Dak.

1979); *American International Underwriters v. Continental Insurance Company*, 843 F.2d 1253

(9th Cir. 1988); *Geiger v. ARCTCO Enterprises, Inc.*,  910 F.Supp. 130 (S.D.N.Y. 1996)

Title 28 U.S.C. §1447(c) provides in pertinent part, "If at any time before final judgment

it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

While this court may exercise federal question jurisdiction over §1983 claims, it may not

exercise jurisdiction over cases removed in violation of the provisions of 28 U.S.C. §1441.  His

Petition for Removal must be denied.

## 6. Motion for Stay of Proceedings Pending in the State Court of Alabama

An appeal or some other collateral attack against plaintiff's Alabama conviction is

currently pending in the Alabama Court of Criminal Appeals under that court's docket number

CR-05-1925.  Plaintiff claims that he "... is unable to complete and file an appellate brief in the

Court of Criminal Appeals of Alabama because of the denial of adequate access to an adequate

law library." [doc. 4] Plaintiff claims that his request for a stay of those proceedings was denied

34

by the Court of Criminal Appeals.  He also claims that the Alabama Supreme Court has refused

to rule on his stay request.[3]

The  abstention doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746,

27 L.Ed.2d 669 (1971) requires this court to abstain from considering plaintiff's request.  In

*Younger*, the Supreme Court recognized a need for federal courts to abstain from interfering in

on-going state court proceedings.  When federal court jurisdiction would interfere with pending

criminal, civil, or administrative state proceedings, the federal court must abstain from exercising

jurisdiction.  For *Younger* to apply, three requirements must be satisfied: (1) the dispute must

involve an ongoing state judicial proceeding; (2) an important state interest in the subject matter

of the proceeding must be implicated; and (3) the state proceeding must afford an adequate

opportunity to raise constitutional challenges.  *Wightman v. Texas Supreme Court,* 84 F.3d 188,

189 (5th Cir. 1996), citing *Middlesex Country Ethics Committee v. Garden State Bar

Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

---

[3] Plaintiff has provided little detail concerning this on-going litigation in Alabama's Court of Criminal Appeal.  On May 25, 2005 plaintiff, who was then incarcerated in Alabama,  filed a civil rights complaint in the United States District Court for the Norther District of Alabama. See *Henry Earl Byrd, Jr. v. Billy Mitchem, et al.*, No. 5:05-cv-1085. In this action plaintiff complains about various discriminatory practices engaged in by the Alabama Department of Corrections and the officials in charge of the Alabama prison where he was then incarcerated. More specifically, plaintiff alleged, "The [Alabama] Department of Corrections allows the discriminatory practice [placement in a particular cell or bunk]  to continue because the plaintiff is appellate counsel on his criminal case and his epileptic seizures are triggered by stress and effectively impeding the plaintiff's meaningful access to the courts." [See *Byrd v. Mitchem, et al.* at  doc. 1, paragraph IV, pp. 5-6] This suit was ultimately dismissed due to plaintiff's failure to prosecute the matter. [id., at doc. 7]

It is unlikely that the "appeal" plaintiff refers to in this complaint is the same "appeal" that he referred to in his May 25, 2005 civil rights complaint. The published jurisprudence of the State of Alabama reveals that plaintiff's Alabama conviction was affirmed by the Alabama Court of Criminal Appeals in an unpublished opinion dated March 18, 2005. *Henry Earl Byrd, Jr. v. State of Alabama*, No. CR-03-1840 (Alabama Court of Criminal Appeals, 3/18/2005), 925 So.2d 1013 (Table), *rehearing denied*, 919 So.2d 1222 (Alabama Court of Criminal Appeals, 4/15/2005), *certiorari denied* by the Alabama Supreme Court July 8, 2005.

35

Plaintiff's pleadings provide little information with respect to the alleged on-going Alabama litigation. Nevertheless, it is safe to conclude that he proceedings are on-going, since plaintiff himself has so alleged. Further, it is safe to conclude that Alabama  has an important interest in dealing with claims of actual innocence on the part of inmates convicted in the courts of that state. Finally, nothing alleged herein suggests plaintiff has been denied the opportunity to litigate his constitutional challenges in Alabama.. Thus, this court finds that the principles enunciated in *Younger* bar this court from considering the plaintiff's claims.

Further, the entire premise of plaintiff's request for a stay is flawed. Plaintiff seeks a stay of on-going state court proceedings because he claims that he has been denied adequate access to the courts. As shown in the discussion of that claim, plaintiff has not been denied access to the courts.

Thus, plaintiff's request for a stay should be denied.

**7. Motion to File All Pleadings**

Finally, plaintiff asks the court to apply the "mailbox rule" to all of plaintiff's pleadings. The "mailbox rule" states that pro se pleadings filed by prisoners are deemed to have been filed on the date that the prisoner submitted his pleadings to the jail authorities for mailing to the court.  This rule was articulated by the Supreme Court in  *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), "Unskilled in law, unaided by counsel, and unable to leave the prison, [a prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access– the prison authorities–and the only information he will likely have is the date he delivered the notice to those prison

36

authorities and the date ultimately stamped on his notice." *Houston*, 487 U.S. at 271-72, 108 S.Ct. at 2382-83.

Since federal courts are obliged to apply the jurisprudential rules articulated by the Supreme Court, plaintiff's Motion is redundant.

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint [doc. 1-1 and doc. 1-4] be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. §§1915 and 1915A; and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Notice of Removal [doc. 1-5] and Petition for Removal [doc. 1-6] be **DENIED**; and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Motion for Temporary Restraining Order/Preliminary Injunction [doc. 3] be **DENIED**; and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Motion to Stay Proceedings Pursuant to the All Writs Act  [doc. 4] be **DENIED**; and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Motion to File All Pleadings Pursuant to the Federal Mailbox Rule [doc. 5] be **DENIED**; and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Motion for Appointment of Counsel [doc. 6] be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may

37

respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, on April 27, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)